# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| **RICHARD BROWN,** *individually, and on behalf of all others similarly situated,* | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| vs. | ) ) | Case No. **2:23-cv-04002-MDH** |
| **STATE FARM FIRE & CASUALTY COMPANY,** | ) ) ) ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant") moves for dismissal of this case pursuant to Federal Rule of Civil Procedure 12(b)(6), to strike the class-action allegations, and for transfer of this case to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). (Docs. 13, 15, 17). For the reasons herein, State Farm's motions to dismiss, to strike the class-action allegations, and to transfer this case are denied. State Farm's motion to stay proceedings pending resolution of the motion to dismiss, Doc. 34, is denied as moot.

## I.    BACKGROUND

This case revolves around the interpretation of an insurance contract. Plaintiff Richard Brown ("Mr. Brown" or "Plaintiff") suffered a property loss in 2013 to his home—a loss covered by a State Farm homeowner's insurance policy. State Farm was obligated to pay Mr. Brown for the "actual cash value" ("ACV") of the property loss, and indeed State Farm made a payment to Mr. Brown under the policy. However, Mr. Brown alleges that State Farm's deduction of labor-depreciation costs from the payment violated the parties' agreement.

The "Loss Settlement" provision in Plaintiff's Policy provides for "Replacement Cost" coverage, that is, payment up to the "cost to repair or replace . . . the damaged part of the property," in two stages. Ex. 1 at Page 28. The ACV payment typically is first, "until actual repair or replacement is completed," but it is "not to exceed the cost to repair." After repairs, State Farm pays any additional, reasonable costs actually incurred above the ACV payment as "replacement cost benefits."

State Farm allegedly chose to calculate Mr. Brown's loss exclusively using a "replacement cost less depreciation" ("RCLD") methodology, and told him so, and it withheld future labor repair costs, totaling $651.15, from his payment. *See* Doc. 32-2, p. 4 ("We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost."). According to Mr. Brown, State Farm's depreciation for labor was improper because State Farm's homeowners' policy does not define "actual cash value" or "depreciation" and does not address depreciating labor costs, and therefore, under Missouri law, labor depreciation should not have been a factor in calculation of the ACV. In other words, Mr. Brown alleges that, "[b]y withholding repair labor costs as depreciation, Defendant breached its obligations to Plaintiff and the putative class members under their respective policies."

Mr. Brown asserts a claim for breach of contract and also seeks a declaratory judgment that the parties' agreement prohibits withholding costs for labor depreciation. He seeks to represent a putative class of Missouri property insurance policyholders for whom State Farm exclusively applied the RCLD methodology to calculate its ACV payment obligation, using Xactimate software, which allegedly permitted the inclusion or exclusion of labor-depreciation at the click of a computer mouse. Mr. Brown does not dispute the actual calculations or valuation conducted by any State Farm adjuster.

Mr. Brown's home was in Florissant, Missouri, which is in St. Louis County, within the Eastern District of Missouri. State Farm is an Illinois company with its principal place of business in Bloomington that sells homeowners' and commercial property insurance in Missouri, employs insurance agents in Cole County, Missouri to sell its insurance policies, and, as a foreign insurer, has as its registered agent the Director of the Missouri Department of Insurance, located in Jefferson City, Missouri.

## II. MOTION TO DISMISS

### A. Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court ordinarily will not consider materials outside of the pleadings, but "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation marks and citation omitted).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, . . . but [is] not bound to accept as true threadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quotation marks and citations omitted).

### B. The Claim for Breach of Contract

#### i. Alleged Factual Departures from LaBrier

State Farm argues that, in all material respects, this case is identical to *LaBrier v. State*

*Farm Fire and Casualty Co.*, 315 F.R.D. 503 (W.D. Mo. 2016), in which the Eighth Circuit ordered dismissal of the plaintiff's claims, and therefore, like *LaBrier*, this case should be dismissed. The policy forms in *LaBrier* and this case both provide for the same two-step loss settlement process: 1) calculating and paying ACV, and 2) subsequently paying reasonable costs actually incurred above the ACV payment. The plaintiffs in both cases alleged that State Farm calculated the ACV payment by depreciating the labor required for the repair, and that that depreciation breached the parties' agreement. In both cases, policies defined neither ACV nor depreciation to include labor costs. In *LaBrier*, the Eighth Circuit held that "State Farm's method of determining estimated 'actual cash value' d[id] not breach its replacement cost contract." *LaBrier*, 872 F.3d at 573. More specifically, the Eighth Circuit found that "depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating 'the difference in value of the property immediately before and immediately after the loss.'" *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 576 (8th Cir. 2017) (quoting *Wells v. Missouri Prop. Ins. Placement Facility*, 653 S.W.2d 207, 214 (Mo. 1983)). State Farm argues that, given the aforementioned similarities, the same result should follow here.

Plaintiff, on the other hand, points to differences between *LaBrier* and this case that, he argues, warrant a different outcome in this case, particularly in light of new Missouri appellate court decision, *Franklin v. Lexington Ins. Co*., 652 S.W.3d 286, 297, 303 (Mo. Ct. App. 2022). In contrast to *LaBrier*, Plaintiff argues, the present matter takes issue with depreciation of future labor costs, rather than embedded labor costs. Future labor costs, according to Plaintiff, are those costs associated with hypothetical labor to be performed only once the insured elects to make repairs. In other words, when calculating ACV by subtracting depreciation from fair market value, future labor refers to non-material costs associated with completing repairs after damages have been

incurred. Embedded labor costs, on the other hand, are those labor costs associated with work previously completed on the property as part of the overall original cost. Insurers appear to variously rely on one method or another when completing repairs. While *LaBrier* references "embedded-labor-cost depreciation" when quoting a Minnesota Supreme Court opinion, it is not entirely clear that the depreciation calculation at issue in *LaBrier* was in fact based on embedded rather than future labor costs, as described by Plaintiff. *LaBrier* lacks significant discussion distinguishing "future" and "embedded" labor costs. The opinion did note, however, that "determining actual cash value by depreciating replacement cost—the method employed by State Farm in this case and apparently by most property insurers nationwide—is an eminently practical and reasonable method for making an initial *estimate* of actual cash value at the time of loss." *LaBrier* at 576. This would seem to indicate the type of depreciation at issue in *LaBrier* is arguably most appropriately described as "future labor," contrary to Plaintiff's allegations. Further, even assuming, *arguendo*, the *LaBrier* insurer depreciated based on embedded rather than future labor, Plaintiff's Amended Complaint fails to adequately identify the significance of this distinction. Regardless, allegations within Plaintiff's Amended Complaint sufficiently distinguish the specific type of labor costs at issue in the present matter from those at issue in LaBrier for purposes of surviving a 12(b)(6) Motion to Dismiss.

A second and perhaps more significant departure from LaBrier alleged by Plaintiff involves a possible waiver on the part of State Farm. Plaintiff contends that, unlike in LaBrier, State Farm "unequivocally adopted the RCLD method as the exclusive method for calculating Plaintiff's ACV payment" and thereby "waived its right to recalculate ACV by a different methodology." (Doc. 37 at 14), This unequivocal adoption occurred, Plaintiff argues, when State Farm provided Plaintiff with a written Xactimate estimate along with Plaintiff's ACV payment. This written notice, like

the policy, fails to define ACV and depreciation to include any labor depreciation. To be clear, Plaintiff does not appear to argue the policy language varies between the present matter and *LaBrier*, but rather that the written notice of the Xactimate estimate in effect bound Plaintiff to a particular type of methodology for determining any depreciation, without explicitly defining depreciation to include labor. Put differently, whereas, in *LaBrier*, State Farm "could have used different methods to estimate fair market value," here the putative class includes only policyholders for whom State Farm conceded coverage "and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology." [1]    Doc. 1-3, ¶ 30.

State Farm argues, in effect, that its statement to Mr. Brown that it "determined the actual cash value by deducting depreciation from the estimated repair or replacement cost" (Doc. 32-2, p. 4) does not a make a contract and that the only binding agreement to which it can be held is the policy itself.  State Farm, however, has pointed to no authority that so limits its obligations.  Indeed, to the contrary, the policy provides "A waiver or change of any provision of this policy must be in writing by us to be valid."  Doc. 14-01, FP-7955, p. 19.

Taken collectively, these alleged departures[2] between the present matter and *LaBrier*

---

[1] State Farm counters that such a waiver must "clearly and unequivocally show[] a purpose by the insurer to relinquish a contractual right," citing *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 342 (8th Cir. 2009), but the language State Farm quotes had to do with "insurers' defenses to coverage," *id.*, not waiver of rights following acceptance of coverage.  And in any event, the Court cannot conclude on the face of the pleadings and documents referenced therein that State Farm's alleged waiver was not clear or unequivocal. State Farm also complains that Plaintiff ignores the Eighth Circuit's conclusion in *LaBrier* that the RCLD methodology results in a "larger initial payment to the insured" than do other methods State Farm could have used.  872 F.3d at 576.  However, that issue goes toward whether Plaintiff was damaged rather than whether State Farm was permitted to use a different methodology, and that is a factual question not ripe for resolution on a motion to dismiss.

[2] Plaintiff also contends that the present matter departs from *LaBrier* in that "he does not dispute any replacement cost valuations made by any State Farm adjuster", unlike the *LaBrier* plaintiff.

indicate that, strictly for purposes of surviving Defendant's 12(b)(6) Motion to Dismiss, Plaintiff has made sufficient allegations to distinguish the present case from *LaBrier*.

### ii.     Impact of Franklin on *LaBrier*

A related issue involves the matter of what effect if any the Missouri Court of Appeals ruling in Franklin has on the Eighth Circuit's opinion in *LaBrier*. As referenced previously, in 2017 the Eighth Circuit held in *LaBrier* that "depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating 'the difference in value of the property immediately before and immediately after the loss.'" *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 576 (8th Cir. 2017) (quoting *Wells v. Missouri Prop. Ins. Placement Facility*, 653 S.W.2d 207, 214 (Mo. 1983)). In effect, this meant that "State Farm's method of determining estimated 'actual cash value' d[id] not breach its replacement cost contract." *LaBrier*, 872 F.3d at 573. Significantly, the Eighth Circuit noted a lack of Missouri case law specifically on point, predicting that the Missouri Supreme Court, which does not accept certified questions of law from federal courts, would agree with the Eight Circuit's holding. *Id*. at 577. In 2022, however, the Missouri Court of Appeals expressly held that "labor may not be depreciated under an insurance policy that does not define ACV or depreciation to expressly include labor depreciation." *Franklin v. Lexington Ins. Co.*, 652 S.W.3d 286, 303 (Mo. Ct. App. 2022), *reh'g and/or transfer denied* (July 26, 2022), *transfer denied* (Oct. 4, 2022).[3]

_____

(Doc. 32 at 7). Another alleged departure is that "the putative class is limited to persons whose ACV payments were reduced or eliminated by the application of specifically identified depreciation option settings within the Xactimate software." (Doc. 32 at 8).

[3] State Farm seeks a far narrower interpretation of the Franklin holding, suggesting the Missouri Court of Appeals "held that labor-cost depreciation breaches a *policy that requires ACV to be calculated as replacement cost less depreciation* because the *policy term* 'depreciation' is ambiguous." (Doc. 41 at 4). This interpretation is attenuated, appearing to ignore plain language that establishes without ambiguity that labor may not be depreciated under any Missouri insurance policy that fails to specifically define ACV or depreciation as inclusive of labor depreciation. *Franklin* at 303.

State Farm argues that *Franklin* is not binding on this Court, but *LaBrier* is, and therefore the Court should disregard *Franklin*. However, State Farm disregards not only the factual differences discussed above but also Eighth Circuit precedent that expressly provides that the Eighth Circuit "must follow" intermediate appellate state courts "when they are the best evidence of what state law is." *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1066 (8th Cir. 2003); *see also Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) ("'[W]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

State Farm cites *AMCO Ins. Co. v. Williams*, 850 F.3d 989 (8th Cir. 2017) and *Burger v. Allied Prop. & Cas. Ins.*, 822 F.3d 445 (8th Cir. 2016), to argue that intermediate appellate decisions from a state court are not binding upon a federal court sitting in diversity. But neither *AMCO* nor *Burger* contradicts the plain holding of *Holden Farms* that federal courts sitting in diversity are obligated to follow intermediate appellate courts as to state law issues in the absence of "persuasive data that the highest court of the state would decide otherwise." *Holden Farms*, 347 F.3d at 1066. In both *AMCO* and *Burger,* the Eighth Circuit refused to follow intermediate Missouri appellate cases because there was a contradictory Missouri Supreme Court case directly on point. *See AMCO*, 850 F.3d at 996 ("Although '[d]ecisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, this court is "not bound to follow these decisions.' Rather, this court is 'bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law.'" (quoting *Burger*, 822 F.3d at 447; *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013)); *Burger*, 822 F.3d at 451 n.2 ("To the extent the

Missouri Court of Appeals reached a contrary conclusion when examining a policy similar to Allied's . . . , we note that we are bound not by this decision of a state intermediate appellate court but by *Rodriguez*, an on-point decision of the state supreme court.").[4]  Here, State Farm does not suggest that there is any persuasive data that the Missouri Supreme Court would decide the issue now before the Court differently than did the *Franklin* court.

Thus, insofar as there is a conflict between *LaBrier's* and *Franklin's* interpretations of Missouri law regarding an insurer's right to depreciate for labor costs when calculating ACV using the RCLD methodology in the absence of policy language unambiguously permitting such depreciation, per binding Eighth Circuit precedent, *Franklin* controls.

**C.    The Claim for Declaratory Judgment**

State Farm argues that Plaintiff's claim for declaratory judgment should be dismissed because it is duplicative of the claim for breach of contract seeking damages.

Plaintiff seeks "a declaration that Defendant's property insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology

---

[4] In other cases that State Farm cites for the proposition that only a state supreme court decision can alter the binding effect of an Eighth Circuit prediction of how that state high court would rule, there was no intervening intermediate state appellate court decision at all (*see Foster v. Ethicon*, 529 F.Supp.3d 992 (D.S.D. 2021); *Stults v. Symrise, Inc.*, 989 F. Supp. 2d 735, 762 (N.D. Iowa 2013)), or the issue that the federal court was deciding was one of *federal*, not state, law (*see, e.g., Hood v. U.S.*, 342 F.3d 861 (8th Cir. 2003) (construing federal statute); *Barakat v. Frontier Just. KCMO, LLC*, No. 4:21-cv-00934-RK, 2022 WL 3269942 (W.D. Mo. Aug. 10, 2022) (same)), or there was evidence that the Missouri Supreme Court would decide the issue differently (*Thomas v. U.S. Bank N.A., N.D.*, No. 11-6013-CV-SJ-SOW, 2014 WL 11309991, at *5 (W.D. Mo. May 9, 2014) (noting that the Eighth Circuit, in rejecting the holding of Missouri Court of Appeals decision, concluded that the intermediate state appellate court had "'ignored both relevant legislative history and what should have been controlling (though dated) Supreme Court precedents'" (quoting *Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 744 (8th Cir. 2012), *reh'g denied*, (8th Cir. 2012), *cert. denied*, 133 S. Ct. 1250 (2013)), *aff'd sub nom. Thomas v. U.S. Bank NA ND*, 789 F.3d 900 (8th Cir. 2015).  Thus, these cases do not undermine *Holden's* holding that a state appellate court decision is in effect binding in the absence of evidence that the state supreme court would decide the issue differently.

employed herein."

A "declaratory judgment claim [that] is purely duplicative of [a] breach of contract claim . . . may be properly dismissed." *Stein for Halpern Ins. Tr. dated June 7, 1994 v. Phoenix Life Ins. Co.*, No. 4:17 CV 2879 (JMB), 2018 WL 3375091, at *2 (E.D. Mo. July 11, 2018). Here, however, the claim for damages for breach of contract seeks different relief from the claim for declaratory judgment: the former seeks relief for a prior breach of contract while the latter seeks a declaration with respect to duties arising under the contract not only in the past, but also in the present and future. *See, e.g., MidCountry Bank v. Rajchenbach*, No. 15-CV-3683 (SRN/TNL), 2016 WL 3064066, at **3–4 (D. Minn. May 31, 2016) ("MidCountry's claims for declaratory judgment and breach of contract are closely related, but the declaratory judgment claim is broader in scope. . . . [T]he declaratory judgment claim will establish what the Defendants' obligations are while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance. Under these circumstances, the Court cannot conclude that MidCountry's breach of contract claim alone is the more appropriate remedy.").

State Farm asserts that, in 2016, it amended its standard form Missouri policy to provide that labor costs may be depreciated in calculating ACV, so there now is no basis for Plaintiff to seek prospective relief. However, even if the Court is authorized to consider any such amendment on the motion to dismiss, the Court is not prepared to dismiss the claim for declaratory judgment on that ground at this time because this is a putative class action; it is possible that the declaratory-judgment claim will serve a unique purpose if a class is certified. *See Wilcox v. State Farm Fire & Cas. Co.*, No. 14–2798 (RHK/FLN), 2015 WL 927093, at *8 (D. Minn. Jan 15, 2015) (denying as premature State Farm's request to dismiss declaratory-judgment claim "[b]ecause it is possible that the Court could certify the putative class as one seeking declaratory or injunctive relief under

Rule 23(b)(2)"); *report and recommendation adopted in relevant part*, No. CIV. 14-2798 RHK/FLN, 2015 WL 927342 (D. Minn. Mar. 4, 2015).

## III.    MOTION TO STAY DISCOVERY

In light of the Court's ruling on the motion to dismiss, State Farm's motion to stay discovery pending a ruling on the motion to dismiss is now moot.

## IV.    MOTION TO STRIKE CLASS-ACTION ALLEGATIONS

State Farm seeks to strike the class-action allegations from Mr. Brown's complaint, arguing that common questions do not predominate over individual questions.

Striking class-action allegations before the filing of a motion for class certification is a "drastic" and "disfavored measure." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021) (quotation marks and citations omitted), *cert. denied*, 212 L. Ed. 2d 7620 (2022). Nonetheless, it is "sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Id.* at 1092 (quotation marks and citation omitted).

State Farm's motion to strike is premised on the Eighth Circuit's holding in *LaBrier* that the question of whether State Farm had satisfied its contractual obligations was one that could "only be determined" based on the facts in any individual policyholder's claim. 872 F.3d at 577. In *LaBrier*, the test for whether the ACV payment violated the policy was whether the result of the calculation produced was a "reasonable" approximation of the difference in value of the insured's property "immediately before and immediately after the [purported] loss"—an issue that turns on the "facts surrounding a particular insured's partial loss" and therefore not susceptible to classwide

resolution.

However, accepting Plaintiff's allegations, as the Court must at this stage, it appears the issue here will be not whether State Farm produced an unreasonable estimate of the ACV but whether State Farm, having elected to employ the RCLD methodology to calculate the ACV and having so stated in writing, could then factor in depreciation for labor costs. The Court cannot conclude at this stage that common questions concerning breach for each putative class member—principally, whether State Farm was permitted to depreciate labor in calculating the ACV using the RCLD methodology given its stated choice to use that methodology—will not predominate over individual inquiries. *See Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) (holding district court did not abuse its discretion in concluding that whether "State Farm violated its contractual obligations by depreciating both materials and labor when calculating ACV" was a "a common question well suited for classwide resolution"). The motion to strike therefore must be denied.

## V.    MOTION TO TRANSFER

Finally, the Court turns to State Farm's motion to transfer this case to the District Court for the Eastern District of Missouri.

### A.    Whether this Court is a Proper Venue

There is no suggestion that this Court is an improper venue for this case. To the contrary, because State Farm, a foreign insurer, is deemed to be a resident of Cole County, this Court is a proper venue for this action. *See* Mo. Rev. Stat. § 508.010.17 ("A foreign insurance company shall be deemed to reside in, and be a resident of, the county where its registered office is maintained. If a foreign insurance company does not maintain a registered office in any county in Missouri, the foreign insurance company shall be deemed to reside in, and be a resident of, Cole

County."); Mo. Rev. Stat. § 375.1803.1 ("Notwithstanding any provision of law to the contrary, in all actions in which there is any count against an insurer, whether in tort or contract, regarding the rights, benefits, or duties under an insurance contract or any action arising from an insurance contract, including but not limited to claims of breach of contract, bad faith, or breach of fiduciary duty, venue shall be in the county where the insurer resides, or if the insured was a resident of Missouri at the time the insurance contract was issued, the county of the insured's principal place of residence, as defined in section 508.010, at the time the insurance contract was issued.").

## B. Whether the Case Should Be Transferred

State Farm seeks transfer under 28 U.S.C. § 1404(a), which provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Court thus must determine first whether this case could have been brought in the Eastern District of Missouri, and then whether convenience factors and the interest of justice weigh in favor of transfer.

The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider'" in deciding whether to transfer a case pursuant to Section 1404(a). *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 691 (8th Cir. 1997)). Instead, the Eighth Circuit has directed "district courts [to] weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Apple*, 602 F.3d at 912; *see also Terra Int'l,* 119 F.3d at 691 ("[C]ourts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."). The decision as to whether to grant a motion for transfer lies within the Court's discretion. *Apple,* 602 F.3d at 912.

### i. Whether the Case Could Have Been Brought in the Eastern District of Missouri

There is no dispute that this case could have been brought in the Eastern District of Missouri. Mr. Brown's home, which also is the covered property at issue, lies in that district, so venue would have been proper there. Mo. Rev. Stat. § 508.010.17; Mo. Rev. Stat. § 375.1803.1. The Eastern District of Missouri, like this Court, has federal-question jurisdiction over this action under the Class Action Fairness Act because the putative class has more than 100 members (28. U.S.C. § 1332(d)(5)(B)), includes members whose citizenship is diverse from that of State Farm (28. U.S.C. § 1332(d)(1)(A)), and the aggregate amount in controversy exceeds $5 million (28 U.S.C. §1332(d)(6)). Finally, State Farm does not dispute personal jurisdiction.

### ii. Convenience

Considerations of convenience that courts consider in weighing motions to transfer include:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l,* 119 F.3d at 696.

Accepting Plaintiff's allegations, this case will turn not on factual disputes relating to individual claims but on legal questions surrounding State Farm's rights and responsibilities under the same or similar agreements. State Farm contends that, given the Eighth Circuit's rulings in *LaBrier*, much fact-finding on an individual basis will be necessary, and therefore the location of both records and witnesses weighs heavily in favor of transfer. However, the Court's rulings on State Farm's motion to dismiss and motion to strike class-action allegations in this Order put that argument to rest. Plaintiff may succeed in establishing breach of contract under *Franklin* if he proves that State Farm bound itself to calculate ACV using the RCLD methodology and

depreciated labor costs in employing that methodology. Given the scope of Plaintiffs' allegations, written discovery relevant to the case will lie largely with State Farm in Illinois and not with the named plaintiff or the local State Farm employees or contractors involved with Plaintiff's insurance claim and related repairs. Additional written discovery and non-party witnesses connected with the software that was used to perform the calculations are located in Utah, Colorado, and Indiana. The bulk of the relevant discovery thus is in neither the Eastern nor the Western District of Missouri. Further, discovery is likely to be conducted electronically for the most part. As such, whether the case proceeds in the Western or Eastern District of Missouri is unlikely to significantly affect access to records or documents or the convenience of non-party witnesses. On the other hand, State Farm's witnesses with relevant knowledge are closer to the Eastern District of Missouri than the Western, and Mr. Brown himself resides within the Eastern District and is closer to the Eastern District of Missouri courthouse.

The same substantive law will apply in the case regardless of whether it is heard in the Eastern or Western District, and neither party has identified any differences in the local rules of either court that would bear on this case.

### iii. The Interest of Justice

The Eighth Circuit has observed that courts typically analyze the following factors in evaluating the interest of justice under Section 1404(a): "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l,* 119 F.3d at 691. The Court considers these factors below, insofar as they are relevant.

### a. Plaintiff's Choice of Forum

Federal courts typically give "considerable deference" to the plaintiff's choice of forum

where there is a connection between the forum and the dispute. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). The party seeking transfer under section 1404(a) therefore ordinarily bears the burden of establishing that transfer is warranted. *Am. Dairy Queen Corp. v. Blume*, 562 F. App'x 545, 546 (8th Cir. 2014).

Here, State Farm has connections to the Western District of Missouri, so Plaintiff's choice of forum is entitled to some deference. *Cf. Apple*, 602 F.3d at 913 (finding that foreign plaintiff's choice of forum "was entitled to minimal weight in the § 1404(a) determination" where there was "no relevant connection" between the chosen forum and the parties, potential witnesses, or the dispute).

### b. Judicial Economy

The issue most likely to be in dispute in this case, whether labor is depreciable under the given policy and Missouri law when ACV is calculated using an RCLD methodology, has been addressed by the Court previously, *see, e.g., LaBrier v. State Farm Fire & Cas. Co.*, No. 15-4093-NKL, albeit before *Franklin* was decided, and the same issue will be addressed again in a related case pending in this district, *M&M Rental, LLC v. State Farm Fire & Cas. Co.*, Case No. 23-5011-MDH. In addition, multiple other cases concerning labor-depreciation, albeit involving different insurers and insurance policies, are pending in this district. *See Held v. Auto-Owners (Mut.) Ins. Co.*, No. 2:22-cv-4162; *Litman v. State Auto Prop. & Cas. Ins. Co.*, No. 2:22-cv-4178*; Scott v. Safeco Ins. Co. of Am.*, No. 2:23-cv-4008; *Varney v. Am. Fam. Mut. Ins. Co.*, No. 23-cv-4004; *Hirsch v. Am. Fam. Mut. Ins. Co.*, No. 23-cv-4005. State Farm does not suggest that related cases or even similar cases are pending in the Eastern District of Missouri. The Court accordingly cannot but conclude that judicial economy weighs against transfer.

### c. Comparative Costs

As discussed above, the location of records, in light of their overwhelmingly being outside

of Missouri and given also the likelihood of electronic production of discovery, is not a significant factor in this case. Similarly, because depositions are likely to take place near witnesses' places of residence or business, those costs are not likely to vary much with a change in venue. However, because Mr. Brown resides in the Eastern District, and State Farm has offices in Illinois, closer to the Eastern District than the Western District, the costs of travel for witnesses at trial would be lower were this case transferred to the Eastern District of Missouri.

### d. Other Factors

Because the law in the Western District of Missouri and the Eastern District of Missouri is substantively and procedurally identical and both courts sit in Missouri, additional traditional considerations in the transfer analysis—*i.e.*, the parties' ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law—are irrelevant.

### e. On Balance, Whether Transfer Is in the Interest of Justice

The sole factor that weighs in favor of transfer is the cost of witnesses' travel to the Western District of Missouri for trial, but the Court finds that that consideration alone is insufficient to overcome the deference due to Plaintiff's choice of forum and the interest in judicial efficiency. *See Reese v. CNH Am. LLH*, 574 F.3d 315, 320 (6th Cir. 2009) (holding that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," and also noting that judge's familiarity with related case that was still pending "g[ave] him a leg up on the factual issues presented"); *cf. Leonard v. Delaware N. Companies Sport Serv., Inc.*, No. 2:15-CV-04139-NKL, 2015 WL 4935094, at *5 (W.D. Mo. Aug. 18, 2015) (granting motion to transfer where "the balance of interests weigh[ed] strongly in favor of the proposed transfer").

## VI.    CONCLUSION

For the reasons discussed above, State Farm's motions to dismiss (Doc. 13), to strike the class-action allegations (Doc. 15), and to transfer this case to the United States District Court for the Eastern District of Missouri (Doc. 17) are DENIED.  State Farm's motion to stay discovery (Doc. 34) pending a ruling on the motion to dismiss, is DENIED as MOOT.

**IT IS SO ORDERED.**
**Dated: August 29, 2023**
                                                      **/s/ Douglas Harpool**
                                                      **DOUGLAS HARPOOL**
                                                      **United States District Judge**