# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

RICHARD BROWN, individually, and on
behalf of all others similarly situated,

        Plaintiff,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. 2:23-cv-04002

Judge M. Douglas Harpool

## STATE FARM FIRE AND CASUALTY COMPANY'S SUGGESTIONS IN SUPPORT OF ITS COMBINED MOTION FOR RECONSIDERATION AND CERTIFICATION UNDER SECTION 1292(b)

James F. Bennett #46826
Robert F. Epperson, Jr. #46430
J. Russell Jackson #65689
Michael J. Kuhn #58936
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
jbennett@dowdbennett.com
repperson@dowdbennett.com
rjackson@dowdbennett.com
mkuhn@dowdbennett.com

Joseph A. Cancila, Jr. (admitted pro hac vice)
Jacob L. Kahn (admitted pro hac vice)
Lauren Abendshien (admitted pro hac vice)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
Telephone: (312) 471-8700
jcancila@rshc-law.com
jkahn@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire and
Casualty Company*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION AND BACKGROUND ................................................................. 1

ARGUMENT ................................................................................................................ 2

I.  State Farm Respectfully Requests Reconsideration of the Court's Conclusion that Plaintiff Alleged Material Differences Between This Case and *LaBrier*. ........................ 2

    A.  State Farm Requests Reconsideration of the Conclusion that Plaintiff Alleged an Effective Difference in Relevant Policy Language. ........................................... 3

    B.  State Farm Requests Reconsideration of the Conclusion that Plaintiff Alleged Depreciation of a Different Type of Labor Cost. ..................................................... 5

    C.  State Farm Requests Reconsideration of the Apparent Conclusion that Plaintiff Identified a Difference in Disputed "Valuations." ................................... 6

    D.  State Farm Requests Reconsideration of the Apparent Conclusion that Plaintiff Alleged a Material Difference Based on State Farm's Use of Certain "Option Settings." ............................................................................................................... 7

II.  Section 1292(b) Certification Is Warranted for the Question of Whether *LaBrier* Controls the Result in this Case. ............................................................................................ 8

    A.  Whether *LaBrier* Controls Here Is a Controlling Question of Law ........................ 8

    B.  There is Substantial Ground for Difference of Opinion on the Question of Whether *LaBrier* Controls Here .......................................................................... 11

    C.  Certification of the Proposed Question Will Materially Advance the Termination of this Suit. ................................................................................................ 14

CONCLUSION ............................................................................................................ 15

Case 2:23-cv-04002-MDH   Document 57   Filed 09/26/23   Page 2 of 21

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Home Assurance Co. v. Pope,*
    591 F.3d 992 (8th Cir. 2010) ...........................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................................6

*Bergstreser v. Mitchell,*
    577 F.2d 22 (8th Cir. 1978) ..............................................................................9

*Cranfield v. State Farm Fire and Cas. Co.,*
    No. 1:16CV1273, 2021 WL 3376283 (N.D. Ohio Aug. 2, 2021) .........................13

*Digital Equip. Corp. v. Desktop Direct, Inc.,*
    511 U.S. 863 (1994)...........................................................................................8

*Franklin v. Lexington Insurance Company,*
    652 S.W.3d 286 (Mo. Ct. App. 2022)........................................................ *passim*

*Glass v. Mancuso,*
    444 S.W.2d 467 (Mo. 1969) ..............................................................................4

*H&R Block Tax Servs. LLC v. Franklin,*
    No. 10-01165-CV-W-DW, 2011 WL 13233811 (W.D. Mo. Nov. 16, 2011) ..............8, 10, 14

*Hager v. Ark. Dep't of Health,*
    735 F.3d 1009 (8th Cir. 2013) ..........................................................................6

*Henn v. Am. Fam. Mut. Ins. Co.,*
    894 N.W.2d 179 (Neb. 2017)...........................................................................15

*Hicks v. State Farm Fire and Cas. Co.,*
    No. 14-CV-00053-HRW, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019)...................9

*Hogquist v. Paccar,*
    No. 3:21-cv-5013-MDH, 2021 WL 4071879 (W.D. Mo. Sept. 7, 2021) ...........2, 7

*In re State Farm Fire and Casualty Company,*
    872 F.3d 567 (8th Cir. 2017) .................................................................... *passim*

*K.C. 1986 Ltd. P'ship v. Reade Mfg.,*
    472 F.3d 1009 (8th Cir. 2007) ..........................................................................2

*Mitchell v. State Farm Fire and Cas. Co.,*
    954 F.3d 700 (5th Cir. 2020) ............................................................................9

*Redcorn v. State Farm Fire and Cas. Co.*,
    55 P.3d 1017 (Okla. 2002) ...................................................................................15

*Redcorn v. State Farm Fire and Cas. Co.*,
    No. 5:00-cv-00463-C (W.D. Okla. Feb. 28, 2003) ..................................................15

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .................................................................................12

*Sharp v. Interstate Motor Freight Sys.*,
    442 S.W.2d 939 (Mo. 1969) ....................................................................................4

*State ex rel. Kinsey v. Messerly*,
    95 S.W. 913 (Mo. 1906) ..........................................................................................4

*Stokes v. Dish Network L.L.C.*,
    No. 2:14-cv-04338-NKL, 2015 WL 4378217 (W.D. Mo. July 15, 2015)..............14

*Swint v. Chambers Cnty. Comm'n*,
    514 U.S. 35 (1995)..................................................................................................11

*Vaughan v. Anderson Reg'l Med. Ctr.*,
    849 F.3d 588 (5th Cir. 2017) .................................................................................10

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ................................................................................8, 13

*Zink v. Lombardi*,
    783 F.3d 1089 (8th Cir. 2015) .................................................................................6

STATUTES

28 U.S.C. § 1292(b) ......................................................................................... *passim*

NEB. REV. STAT. § 24-219 .......................................................................................15

OKLA. STAT. tit. 20, § 1602........................................................................................15

RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

Fed. R. Civ. P. 54(b) ....................................................................................................2

## INTRODUCTION AND BACKGROUND

In 2017, after more than two years of litigation and burdensome class-wide discovery, the Eighth Circuit examined a State Farm insurance policy providing for payment of "actual cash value" and held that, under Missouri law, "State Farm's method of determining estimated 'actual cash value' does not breach" that policy. *In re State Farm Fire and Casualty Company*, 872 F.3d 567, 573 (8th Cir. 2017) ("*LaBrier*"). The Eighth Circuit further held that because State Farm's method of estimating actual cash value (or ACV) does not, on its own, constitute a breach of contract, there was "no basis to certify a class" in that case, as there were "no predominant common facts" among the putative class members. *Id.* at 573, 577 (emphasis omitted) (reversing class certification and vacating several class-wide discovery orders).

Five years later, Plaintiff here—who was a member of the *LaBrier* class—sued State Farm (also on behalf of a putative class) for allegedly breaching an identical policy by the same method of determining ACV that was at issue in *LaBrier*. Based on the Eighth Circuit's opinion in *LaBrier*, State Farm moved to dismiss Plaintiff's suit and to strike the class allegations. (Dkts. 13–16.) In opposition, Plaintiff asserted that he had alleged facts distinguishing this case from *LaBrier* and that, in any event, the Missouri Court of Appeals had effectively overruled *LaBrier* in *Franklin v. Lexington Insurance Company*, 652 S.W.3d 286 (Mo. Ct. App. 2022). (Dkts. 32, 37.) By order dated August 29, 2023, the Court accepted Plaintiff's arguments and denied State Farm's motions. (Dkt. 52 (the "Order").)

State Farm respectfully submits that the Order contains several clearly erroneous conclusions as to the purported differences between this case and *LaBrier*. State Farm therefore requests that the Court reconsider that portion of the Order. In addition, State Farm requests that the Court make the requisite findings to enable State Farm to pursue an interlocutory appeal of the Order under 28 U.S.C. § 1292(b). State Farm submits that there is substantial ground for difference

of opinion on the question of whether the Eighth Circuit's decision in *LaBrier* is still controlling here under principles of stare decisis, and that immediate resolution of this controlling question of law may resolve this suit entirely and avoid years of onerous and resource-intensive discovery like that vacated in *LaBrier*. 872 F.3d at 577. The question that State Farm asks the Court to certify for interlocutory review is as follows:

> Does the Eighth Circuit's holding in *In re State Farm Fire and Casualty Company*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*")—namely, that State Farm's methodology for calculating actual cash value payments "does not breach" the language in its insurance policy under Missouri law—require dismissal of claims challenging the same methodology under the same policy, where an intervening Missouri Court of Appeals decision adopted the Eighth Circuit's analysis of Missouri law in *LaBrier* but reached a different conclusion as to the alleged breach there after distinguishing the policy language at issue in the two cases?

## **ARGUMENT**

## I. **State Farm Respectfully Requests Reconsideration of the Court's Conclusion that Plaintiff Alleged Material Differences Between This Case and *LaBrier*.**

Under Federal Rule of Civil Procedure 54(b), "a district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *Hogquist v. Paccar*, No. 3:21-cv-5013-MDH, 2021 WL 4071879, at *2 (W.D. Mo. Sept. 7, 2021) (quoting *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007)) (internal quotation marks omitted). With this inherent power, the court may "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Id.* (citation omitted). And though this authority should be used sparingly, it should be used, for example, to revisit a decision that "misunderstood a party" or one made "outside of the adversarial issues," or if declining to revisit the decision would otherwise "work a manifest injustice." *Id.* (citations omitted).

This Court's Order concluded (or appeared to conclude) that Plaintiff had alleged facts plausibly suggesting four material differences between this case and *LaBrier*—namely, that: (1) Plaintiff's policy is effectively (rather than explicitly) different than the policy at issue in

*LaBrier*; (2) Plaintiff has alleged depreciation of a different type of labor cost than was allegedly depreciated in *LaBrier*; (3) unlike the plaintiff in *LaBrier*, Plaintiff here does not dispute certain "valuations" made by State Farm's claim representatives; and (4) unlike in *LaBrier*, Plaintiff's putative class is limited to persons whose ACV payments were estimated using identified depreciation option settings in the relevant estimating software. (Dkt. 52 at 4–7.) State Farm respectfully submits that the Order's conclusion (or apparent conclusion) as to each of these purported differences was clearly erroneous. State Farm therefore asks that the Court reconsider that portion of its Order to prevent a manifest injustice.

### A. State Farm Requests Reconsideration of the Conclusion that Plaintiff Alleged an Effective Difference in Relevant Policy Language.

The Court's Order first determined that Plaintiff alleged facts plausibly suggesting an effective difference in policy language between this case and *LaBrier* regarding State Farm's contractual right to choose a method for estimating a policyholder's ACV. Specifically, the Order concluded that this case is unlike *LaBrier* because, here, State Farm allegedly "chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology" and thereby impliedly "waived its right to recalculate ACV by a different methodology." (Dkt. 52 at 5–6 (quoting Dkt. 1-3 ¶ 30 and Dkt. 37 at 14).) But this conclusion erroneously conflates two distinct concepts: (1) State Farm's contractual right to choose an initial method for estimating ACV from among many other potentially available methods; and (2) any right State Farm may have had under its contract to later recalculate ACV by a different method. By mixing these two concepts, the Order contravened longstanding Missouri law.

Whether State Farm waived a right to "recalculate" an estimate by a method other than the one it initially chose (Dkt. 37 at 14 n.11) would be relevant here only if Plaintiff had alleged that State Farm had performed such a recalculation and that Plaintiff had been injured by that switch.

But Plaintiff brings no such claim. Instead, just like the plaintiff in *LaBrier*, Plaintiff here alleges injury solely from State Farm's use of its single, chosen calculation methodology—replacement cost less depreciation. *See LaBrier*, 872 F.3d at 576 (describing State Farm's chosen method there). Thus, to determine if the *relevant* contractual right is the same here as it was in *LaBrier*, the only question is whether Plaintiff's policy, like the policy in *LaBrier*, afforded State Farm the right to choose an ACV estimation method in the first place. It undisputedly did.

Yet the Order effectively held that State Farm, merely by making the choice afforded to it under the policy, retroactively erased that very option from the policy. Or, stated differently, the Order appears to have held that under Missouri law, a party waives a given contractual right simply by exercising it. Respectfully, this cannot be so. Indeed, Missouri law has long held that for a party to impliedly waive a right, it must "do[] or forbear[] the doing of something *inconsistent* with the exercise of the right or of [the party's] intention to rely upon it." *State ex rel. Kinsey v. Messerly*, 95 S.W. 913, 914 (Mo. 1906) (emphasis added); *see also, e.g., Glass v. Mancuso*, 444 S.W.2d 467, 478 (Mo. 1969) (explaining that "a waiver must be shown by some positive act or by some positive inaction *inconsistent* with the right in question") (emphasis added) (citation omitted); *Sharp v. Interstate Motor Freight Sys.*, 442 S.W.2d 939, 945 (Mo. 1969) (similar). Here, Plaintiff has alleged only that State Farm acted *consistently* with the terms of Plaintiff's policy by estimating ACV with a method of State Farm's choosing—just as State Farm did in *LaBrier*, *see* 872 F.3d at 573–76 (discussing that choice).

Reconsideration is thus appropriate as to the Order's conclusion regarding the first purported difference between this case and *LaBrier*.

**B.** **State Farm Requests Reconsideration of the Conclusion that Plaintiff Alleged Depreciation of a Different Type of Labor Cost.**

The Order also determined that, at least as alleged in the complaint, this case concerns the depreciation of a different type of labor cost than was at issue in *LaBrier*. (Dkt. 52 at 4–5.) State Farm respectfully submits that this determination was also clear error.

In opposition to State Farm's motion to dismiss, Plaintiff argued that, while this case concerns State Farm's alleged depreciation of "future" labor costs, *LaBrier* supposedly addressed the alleged depreciation of only "embedded" labor costs. (*See id.* (discussing this argument).) State Farm explained in its reply that, notwithstanding Plaintiff's contrasting labels, there is no difference: the only labor costs at issue here (as in *LaBrier*) are the costs it appears will be needed, in the *future*, to complete repairs on the subject property. (Dkt. 41 at 11.) The Court agreed with State Farm, finding that, "contrary to Plaintiff's allegations," the labor costs that were at issue in *LaBrier* are "most appropriately described as 'future labor'" costs. (Dkt. 52 at 5; *see also id.* (further observing that even if *LaBrier* had concerned the depreciation of "embedded" labor, Plaintiff had failed to "identify the significance of this distinction").) Yet the Court then held that Plaintiff had sufficiently alleged facts distinguishing the types of costs between the two cases at the pleadings stage. (*Id.*)

Respectfully, this was error. As to the type of labor costs depreciated in this case and in *LaBrier*, the only distinction that Plaintiff purported to draw was the one that the Court explained did not exist. (*Compare* Dkt. 32 at 16 (table, third row, summarizing embedded-versus-future-labor argument) *and* 17–18 (presenting same argument), *with* Dkt. 52 at 4–5 (addressing same).) In then holding to the contrary, the Order therefore appears to have taken Plaintiff's mere *assertion* of a difference—that is, his legal argument—as an alleged fact entitled to the presumption of truth under Rule 12(b)(6). Plaintiff's complaint here does not itself address *LaBrier* or assert any

supposed differences between this case and that one. (*See generally* Dkt. 1-3.) But even if it had, "[c]ourts must not presume the truth of legal conclusions couched as factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) ("[L]egal conclusions . . . are not entitled to a presumption of truth when considering the sufficiency of a complaint." (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). Reconsideration is thus appropriate here as well.

## C. State Farm Requests Reconsideration of the Apparent Conclusion that Plaintiff Identified a Difference in Disputed "Valuations."

The Order further appeared to conclude in a footnote that this case may differ materially from *LaBrier* based on Plaintiff's argument in his briefing that he "does not dispute any replacement cost valuations" by State Farm. (Dkt. 52 at 6–7 n.2 (quoting Dkt. 32 at 7).) But Plaintiff's characterization of his allegations as materially "different" from the allegations in *LaBrier* does not make them so. This characterization, too, is merely an assertion of law. Accordingly, the Court may not assume that it is correct. *Hager*, 735 F.3d at 1013.[1] To the extent the Order made this assumption and concluded that Plaintiff's argument—as opposed to the factual allegations in his complaint—established a material difference between this case and *LaBrier*, reconsideration is also appropriate.

---

[1] As State Farm explained in support of its motion to dismiss, Plaintiff's assertion is *not* correct. (*See* Dkt. 41 at 10.) In both *LaBrier* and this case, State Farm calculated actual cash value by applying depreciation to an estimate of replacement cost value. *Compare LaBrier*, 872 F.3d at 576 (discussing State Farm's estimation method there) *with* Dkt. 1-3 ¶ 14 (alleging use of the same method here). In other words, estimated replacement cost was the "input" of the equation in both cases, and estimated actual cash value was the "output." The plaintiff in *LaBrier* claimed disagreement with and injury from only the "output"—or, more specifically, from the equation that yielded that "output." 872 F.3d at 576. The same is true here. The sole basis of Plaintiff's purported harm here is State Farm's estimate of ACV. (Dkt. 1-3 at, *e.g.*, ¶¶ 21, 23.) That Plaintiff here takes no issue with the "input" to which State Farm applied depreciation in calculating its estimate of ACV is irrelevant to determining whether this case is a repeat of *LaBrier*, because the accuracy or reasonableness of that "input" was not at issue in *LaBrier*, either.

**D.   State Farm Requests Reconsideration of the Apparent Conclusion that Plaintiff Alleged a Material Difference Based on State Farm's Use of Certain "Option Settings."**

Finally, the Order appears to have taken as fact Plaintiff's bald suggestion that this case materially differs from *LaBrier* because of State Farm's alleged use here of certain "option settings within . . . Xactimate." (Dkt. 52 at 6–7 n. 2 (quoting Dkt. 32 at 8).) To the extent the Order did so, that was clear error. (*See supra* at 5–6.) Plaintiff merely referenced his "option setting" allegation in the "Factual Allegations" section of his brief. (Dkt. 32 at 8.) Plaintiff made no argument on this point and did not explain how it supposedly makes this case substantively different from *LaBrier*. (*See id.* at 16–18 (arguing the purported relevance of other allegations).). Accordingly, State Farm respectfully submits that this issue was "outside of the adversarial issues" presented in the briefs, and that the Order therefore should not have considered it. *Hogquist*, 2021 WL 4071879, at *2.

Regardless, the fact that Plaintiff has defined his putative class based on State Farm's alleged use of certain Xactware option settings does not materially distinguish his case from *LaBrier*.[2] The specific settings State Farm used to depreciate costs in *LaBrier* were irrelevant to the Eighth Circuit's analysis. What mattered there was simply whether the insured's policy permitted State Farm to estimate ACV "by depreciating replacement cost," including the "labor component" of that cost, period. 872 F.3d at 572–73, 576 (concluding that it did). This case presents the same question. Thus, despite Plaintiffs' assertions to the contrary, this case is the same as *LaBrier* in all material respects.

In sum, and for the reasons just discussed, State Farm respectfully requests that the Court reconsider the portions of its Order concluding that Plaintiff alleged facts plausibly suggesting that this case is materially different from *LaBrier*.

---

[2] As Plaintiff made no argument on this point, State Farm did not address it, either. State Farm addresses the "option settings" assertion now because the Order appears to have relied upon it.

## II.    Section 1292(b) Certification Is Warranted for the Question of Whether *LaBrier* Controls the Result in this Case.

Under 28 U.S.C. § 1292(b), a district court "shall" certify a non-final order (or portion thereof) for interlocutory appeal when the court is of the opinion that: (1) the order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that question; and (3) certification may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994) (similar) (citation omitted). State Farm respectfully submits that the there is a controlling question of law presented by the Order as to which there is substantial ground for difference of opinion and for which immediate resolution by the Eighth Circuit would materially advance the ultimate termination of this litigation. That question is as follows:

> Does the Eighth Circuit's holding in *In re State Farm Fire and Casualty Company*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*")—namely, that State Farm's methodology for calculating actual cash value payments "does not breach" the language in its insurance policy under Missouri law—require dismissal of claims challenging the same methodology under the same policy, where an intervening Missouri Court of Appeals decision adopted the Eighth Circuit's analysis of Missouri law in *LaBrier* but reached a different conclusion as to the alleged breach there after distinguishing the policy language at issue in the two cases?

### A.    Whether *LaBrier* Controls Here Is a Controlling Question of Law.

For purposes of Section 1292(b), decisions involving the "[c]onstruction of contractual agreements" present controlling questions of law when they "affect[] the majority of the remaining issues" in the litigation. *H&R Block Tax Servs. LLC v. Franklin*, No. 10-01165-CV-W-DW, 2011 WL 13233811, at *1–2 (W.D. Mo. Nov. 16, 2011) (citing *Am. Home Assurance Co. v. Pope*, 591 F.3d 992, 998 (8th Cir. 2010)) (granting motion for § 1292(b) certification with respect to court's finding that parties' contract was enforceable under Missouri law); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994) (observing that § 1292(b) is an appropriate "vehicle for vindicating serious contractual interpretation claims"). This standard is met here.

-8-

State Farm's proposed question for certification centers on the proper interpretation of State Farm's insurance contract under Missouri law—specifically, on the same labor depreciation issue that multiple courts around the country have found to present a controlling question of law. *See, e.g.*, *Hicks v. State Farm Fire and Cas. Co.*, No. 14-CV-00053-HRW, 2019 WL 846044, at *1 (E.D. Ky. Feb. 21, 2019) (describing the district court's grant of State Farm's request for § 1292(b) certification  and the Sixth Circuit's subsequent acceptance of State Farm's petition for interlocutory appeal, concerning "the issue of depreciation of labor costs"); *Mitchell v. State Farm Fire and Cas. Co.*, 954 F.3d 700, 704 n.2 (5th Cir. 2020) (similar). Moreover, it addresses whether an earlier decision by the Eighth Circuit interpreting the *same contract* under Missouri law remains controlling precedent following an intervening opinion by the Missouri Court of Appeals that relied upon and factually distinguished—but did not overrule—that decision.[3] The latter aspect makes this question "unusual and novel," and therefore even more appropriate for § 1292(b) certification. *Bergstreser v. Mitchell*, 577 F.2d 22, 23–24, 27 (8th Cir. 1978) (deciding § 1292(b) appeal even though no Missouri court had addressed the certified issues).

Disputes regarding the continuing validity of Circuit precedent in view of intervening developments in the law are particularly appropriate for 1292(b) review. For example, under circumstances similar to those presented in this case, the U.S. Court of Appeals for the Fifth Circuit

---

[3] As discussed further below (*see infra* at 11–12), the Missouri Court of Appeals merely compared and distinguished the two cases based on the different policy language at issue in each:

> In *LaBrier*, the insurer could have used different methods to estimate the fair market value of a property before and after a destructive event, and the policies in *LaBrier* did not specify which method to use. Here, the policy describes RCV [replacement cost value], in comparison to ACV, as "replacement cost without deduction for depreciation . . . . Having found the policy [here] ambiguous on whether labor can be depreciated, we must construe the policy liberally in favor of Mrs. Franklin and strictly against Lexington.

*Franklin*, 652 S.W.3d at 303.

accepted and decided a § 1292(b) appeal asking whether an earlier panel decision from the Fifth Circuit controlled and required dismissal of the plaintiff's claims despite intervening developments in the applicable law. *See Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 590 (5th Cir. 2017). The *Vaughan* court answered that question "yes," reasoning that the intervening developments (*e.g.*, amendments to the Fair Labor Standards Act and interpretative statements by a relevant federal agency) did "not constitute an intervening change in law sufficient to displace" the earlier Fifth Circuit panel decision. *Id.* at 591–93; *see also id.* at 593 (noting that even if the intervening developments were persuasive, they "would not provide a sufficient basis for departing from an established precedent"). State Farm's proposed question addressing the controlling weight of *LaBrier* is even more appropriate for certification than the questions in *Vaughan*, because this case involves the exact same insurance policy that was at issue in *LaBrier*, the exact same liability theory, the exact same defendant, and a plaintiff who was part of the originally asserted class in *LaBrier*. (*See* Dkt. 14 at 8–10.)[4]

Finally, State Farm's proposed question for certification is also a controlling question because resolving it will "affect[] the majority of the remaining issues" in the litigation. *H&R Block*, 2011 WL 13233811, at *1. The contract interpretation issue presented by State Farm's proposed question was resolved in State Farm's favor in *LaBrier*, leading directly to the dismissal of the plaintiff's entire complaint, with prejudice. *See* Order Dismissing Case, *LaBrier v. State Farm Fire and Cas. Co.*, No. 2:15-cv-04093-NKL (W.D. Mo. Nov. 7, 2017), Dkt. 296 (dismissing

---

[4] The Court in *Vaughan* also considered whether the facts in that case were on all fours with the facts in the Fifth Circuit's earlier decision, ultimately answering that threshold question in the affirmative. 849 F.3d at 591. As demonstrated above, the same threshold question here should also be answered in the affirmative. (*See supra* at 2–7.) Nonetheless, if necessary, the question of whether this case is the same as *LaBrier* in all material respects could also be certified under § 1292(b) for the same reasons that the question of whether *LaBrier* remains controlling precedent in this case should be certified.

LaBrier's complaint as a result of the Eighth Circuit's decision). Here, too, the same contract interpretation issue is the essential underpinning of *all* class claims that Plaintiff is pursuing. Accordingly, if State Farm's proposed question were answered in the affirmative, such a decision would compel dismissal of Plaintiff's claims both as to Plaintiff individually and as to the asserted class, just as in *LaBrier*.

### B. There is Substantial Ground for Difference of Opinion on the Question of Whether *LaBrier* Controls Here.

Whether *LaBrier* controls the result in this case is also a question on which "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). For such a ground to exist, the district court's existing opinion need not be incorrect; it need only be "debatable." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995) (observing that § 1292(b) provides the "authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable").

Here, it is at least debatable (and, from State Farm's perspective, clear) that the Eighth Circuit's decision in *LaBrier* remains controlling in this case notwithstanding the Missouri appellate court's decision in *Franklin*, because the court in *Franklin* did not overrule or disavow *LaBrier*, but rather distinguished it based upon the different facts at issue in the two cases. In *Franklin*, the Missouri Court of Appeals held that the policy issued by Lexington Insurance Company—a different policy than the policy issued by State Farm here and in *LaBrier*—did not permit the carrier to depreciate labor costs in determining the insured's ACV. 652 S.W.3d at 301–02. While in certain parts of its opinion, the *Franklin* court used general language appearing to apply to all insurance policies (as this Court noted in its August 29 Order (*see* Dkt. 52 at 7 n.3)), in others, the court spoke specifically of the policy language at issue in that case, and it explicitly distinguished *LaBrier* on this basis.

For instance, in explaining why the method of estimating ACV deemed permissible in *LaBrier* was not acceptable in *Franklin*, the *Franklin* court emphasized that unlike the policies in *LaBrier*—which "did not specify which method [of estimating ACV] to use"—the policy in *Franklin* had expressly limited the insurer there to estimating ACV in a particular way ("replacement cost [with] deduction for depreciation"). 652 S.W. at 302–03. And it was this *expressly agreed* method of estimating that the *Franklin* court held was ambiguous, thus requiring a construction in favor of the insured. *See id.* at 297 (holding that "without a specific definition" in the policy, the word "depreciation," as it was used in the policy "in th[a]t case," should be construed to refer only to physical deterioration). The *LaBrier* policy contained no such limitation, nor even the word "depreciation" in or around the reference to ACV. Dkt. 14-1 at 28. And because it contained no such limitation (and therefore no such ambiguity), it is at least debatable that the *Franklin* court's reasoning was not intended to apply to *LaBrier* or to policies that (like the one here) are identical to the policy in *LaBrier*. Accordingly, there is "substantial ground for difference of opinion" on whether *LaBrier* remains controlling in this case notwithstanding the decision in *Franklin*. 28 U.S.C. § 1292(b).

Additional circumstances also support this conclusion. Specifically, courts' use of § 1292(b) "has been wisely targeted to avoid [the] undesirable consequences" of leaving novel and difficult legal questions unaddressed by the applicable court of appeals. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 and n.5 (9th Cir. 2011) (rejecting a "rigid approach toward § 1292(b)" and explaining that such questions should be certified for interlocutory review when "fair-minded jurists might reach contradictory conclusions"). Such undesirable consequences can include "unnecessar[ily] protracted litigation and a considerable waste of judicial resources." *Id.* at 688 n.5. The threat of such consequences here is real.

Counsel for all parties will agree that labor depreciation litigation can be lengthy and protracted. For example, by the time the district court in a recent Ohio labor depreciation case against State Farm denied the plaintiffs' motion for class certification, the matter (prosecuted by one of the same attorneys for Plaintiff here) had been pending for more than five years. *See Cranfield v. State Farm Fire and Cas. Co.*, No. 1:16CV1273, 2021 WL 3376283, at *1 (N.D. Ohio Aug. 2, 2021) (noting that the suit was originally filed in April 2016). The *LaBrier* case likewise demonstrates the threat of enduring (and expensive) proceedings, as plaintiff's counsel there served extensive discovery demanding a broad range of information about each one of nearly 145,000 putative class members—including, among other things, the dates and amounts of any depreciation allegedly "withheld" by State Farm for each putative class member's claim, the amounts of any alleged "repayments" of such depreciation for each such claim, and the facts regarding State Farm's potential affirmative defenses for each such claim. *See* 872 F.3d at 571.[5] State Farm was ordered to provide this discovery over its objections, and incurred significant costs both in complying with those orders and in briefing the class-certification issue, before the Eighth Circuit ultimately vacated those "premature" rulings and reversed certification of the class based on its interpretation of State Farm's policy—more than two and a half years after the complaint was filed. *See id.* at 571, 573, 577 (issued Sept. 25, 2017); Petition for Declaratory and Class Action Relief, *LaBrier*, No. 2:15-cv-04093-NKL (W.D. Mo.), Dkt. 1-1 (filed March 20, 2015).

There is no need to tax the present parties, or this Court, with such a protracted and burdensome experiment. Though motions for 1292(b) certification should "be granted sparingly," there are "exceptional [cases] in which immediate appeal is warranted." *White*, 43 F.3d at 376

_____

[5] Plaintiff here is represented by some of the same attorneys for the plaintiff in *LaBrier* and has already begun to propound similar discovery in this case. (*See* Dkt. 43 at 7–10.)

(citation omitted). This is such a case. Because the Missouri appellate court's opinion in *Franklin* at least debatably left *LaBrier* intact as it relates to the claims in this case, this litigation can and should be resolved now. *See Stokes v. Dish Network L.L.C.*, No. 2:14-cv-04338-NKL, 2015 WL 4378217, at *12 (W.D. Mo. July 15, 2015) (certifying for interlocutory appeal questions concerning how Colorado law treats certain contractual terms where, as here, such certification could "prevent years of protracted litigation including class certification and costly notice to millions of potential class members"), *rev'd in part on other grounds*, 838 F.3d 948 (8th Cir. 2016); *H&R Block*, 2011 WL 13233811, at *2 (certifying question under § 1292(b) "in order to avoid the possibility that the parties engage in extensive unnecessary litigation").

### C.   Certification of the Proposed Question Will Materially Advance the Termination of this Suit.

The final requirement for certifying a question for interlocutory appeal is that certification "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In other words, the movant must show that interlocutory appeal will "alter th[e] litigation . . . significantly." *H&R Block*, 2011 WL 13233811, at *2. This requirement is met here for the reasons discussed above. Simply stated, the Court in *LaBrier* has already concluded that State Farm's alleged method of calculating ACV "does not breach" its policy, the same policy at issue here. 872 F.3d at 573. A decision holding that *LaBrier* is still controlling precedent here would therefore conclusively resolve all the claims asserted by Plaintiff in this case.

The potential impact of certification in this case is similar to the potential impact in cases where state supreme courts have accepted certified questions from federal courts regarding the permissibility of labor depreciation under a particular insurer's policy, as interpreted under that state's law. For example, the Oklahoma Supreme Court and the Nebraska Supreme Court both accepted certified questions on these issues, eventually concluding that the applicable policy

language in each case permitted the insurers' depreciation of estimated labor costs. *See Redcorn v. State Farm Fire and Cas. Co.*, 55 P.3d 1017, 1018 (Okla. 2002); *Henn v. Am. Fam. Mut. Ins. Co.*, 894 N.W.2d 179, 861 (Neb. 2017).[6] After the decisions in *Redcorn* and *Henn*, the plaintiffs' complaints were dismissed, and each litigation was terminated in its entirety. Order Dismissing Case, *Redcorn v. State Farm Fire and Cas. Co.*, No. 5:00-cv-00463-C (W.D. Okla. Feb. 28, 2003), Dkt. 77; Order Dismissing Case, *Henn v. Am. Family Mut. Ins. Co.*, No. 8:15-cv-00257-JFB-SMB (D. Neb. Mar. 30, 2017), Dkt. 72.[7]

For all these reasons, certifying State Farm's proposed question for interlocutory appeal could "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## CONCLUSION

For the forgoing reasons, State Farm respectfully requests that the Court: (a) reconsider the portion of its August 29, 2023 Order holding that this case differs materially from *LaBrier*, and (b) certify for interlocutory appeal State Farm's proposed question of whether *LaBrier* remains controlling precedent in this case in spite of the Missouri appellate court's decision in *Franklin*.

Dated:  September 26, 2023                    Respectfully submitted,

By: /s/ *Jacob L. Kahn*

---

[6] While the standard for certifying questions to a state supreme court is not identical to the standard for certifying questions for interlocutory appeal under § 1292(b), each state's statute, similar to § 1292(b), requires unsettled law as to a legal question that may be determinative of the litigation. *See* NEB. REV. STAT. § 24-219; OKLA. STAT. tit. 20, § 1602.

[7] The Nebraska Supreme Court's decision in *Henn* even operated to terminate pending litigation against other insurers. *See* Order Dismissing Case, *Burdess v. State Farm Fire & Cas. Co.*, No. 8:15-cv-00454-LES-CRZ (D. Neb. Apr. 11, 2017), Dkt. 43. Thus, the Eighth Circuit's resolution of the question proposed for certification here could even materially advance the termination of other labor depreciation litigation currently pending in federal courts in Missouri. *See M&M Rental Prop. LLC v. State Farm Fire and Cas. Co.*, No: 3:23-cv-05011-MDH (W.D. Mo.); *Varney v. Am. Fam. Mut. Ins. Co.*, No. 2:23-cv-04004-SRB (W.D. Mo.); *Hirsch et al. v. Am. Fam. Mut. Ins. Co.*, No. 2:23-cv-4005-SRB (W.D. Mo.); *Scott v. Safeco Ins. Co. of Am.*, No. 2:23-cv-04008-MDH (W.D. Mo.); *Litman v. State Auto Prop. & Cas. Ins. Co.*, No. 2:22-cv-4178-BCW (W.D. Mo.); *Ledford v. Travelers Home & Marine Ins. Co.*, No. 2:23-cv-04079-BCW (W.D. Mo.).

James F. Bennett #46826
Robert F. Epperson, Jr. #46430
J. Russell Jackson #65689
Michael J. Kuhn #58936
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
jbennett@dowdbennett.com
repperson@dowdbennett.com
rjackson@dowdbennett.com
mkuhn@dowdbennett.com

Joseph A. Cancila, Jr. (admitted pro hac vice)
Jacob L. Kahn (admitted pro hac vice)
Lauren Abendshien (admitted pro hac vice)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
Telephone: (312) 471-8700
jcancila@rshc-law.com
jkahn@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire and
Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on September 26, 2023, a copy of the foregoing document was filed and served through the Court's electronic filing system on all counsel of record in this case.

By: /s/ *Jacob L. Kahn*_____
Jacob L. Kahn